UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NORTHERN MARINE UNDERWRITERS, LTD., § § § Plaintiff, § v. § CIVIL ACTION NO. H-08-2549 § FBI EXPRESS, INC., FREIGHT § BROKERS, INC., P AND G § TRANSPORT, AND JAMCO, § § Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court are the Motions for Final Judgment of Defendants Freight Brokers, Inc. and FBI Express, Inc. ("FBI Parties" collectively), and of Defendant JAMCO International ("JAMCO") (Doc. Nos. 82 and 83). Having considered the Motions, all responses thereto, and the applicable law, the Court finds that the FBI Parties' Motion should be granted as to Plaintiff's negligence and bailment claims, and JAMCO's Motion should be denied.

I. BACKGROUND

A. Factual History

Plaintiff, a British company, is the insurer of Richard Haworth, Ltd. ("Haworth"), a company based in England. Haworth hired Defendants FBI Express, Inc. ("FBI Express") and/or Freight Brokers, Inc. ("Freight Brokers") to transport 462 rolls of fabric ("Shipment") from South Carolina to San Pedro, Cholula Puebla, Mexico. The FBI Parties assert that they agreed to act only as shipping broker to coordinate and arrange transportation for the Shipment, but not actually to transport the Shipment. (FBI Parties

1

Mot., Doc. No. 82, at 4.) The FBI Parties then contracted, on behalf of Haworth, with P&G Transport ("P&G") to transport the shipment from South Carolina to Laredo, Texas. The FBI Parties also contracted with JAMCO to take possession of the Shipment in Laredo, and to act as a Customs Broker and assist in clearing the Shipment through United States/Mexican Customs ("Customs") at the border. JAMCO subcontracted the drayage portion of the transportation to JM Transport. (JAMCO Mot., Doc. No. 83, ¶ 7.)

In September of 2007, in South Carolina, the Shipment was loaded onto a subject truck in good order and condition, with an invoice valued at $137,760. (Pl. Compl., Doc. No. 5, ¶ 7.) At this first pick-up, P&G purportedly issued a through bill of lading covering the Shipment from Union, South Carolina, to Cholula Puebla, Mexico. (Pl. Br., Doc. No. 85, ¶ 11.) The Shipment was again inspected at a distribution warehouse in Texas and was noted as being in good condition. (*Id.* ¶ 9.) JAMCO received the Shipment in Laredo, Texas, and initialed the same bill of lading. (Pl. Compl. ¶ 8.) On September 13, 2007, Eduardo Villa ("Mr. Villa"), a driver for JM Transport, arrived at JAMCO to retrieve the Shipment. At around 1:20 pm, Mr. Villa left JAMCO's yard with the Shipment and headed toward Customs. Mr. Villa cleared Customs at about 8:28 pm that evening and proceeded to the yard of Logistica Sanchez Brothers in Nuevo Laredo. (Pl. Br. ¶ 22.)

Mr. Villa was intercepted by hijackers while in Mexico. The hijackers stole the truck and the Shipment and left Mr. Villa by the side of the road. Mr. Villa then called his dispatcher, who picked him up. The next morning, Mr. Villa contacted the police and reported the hijacking.

**B.     Procedural History**

2

Plaintiff Northern Marine Underwriters, Limited filed this lawsuit in its capacity as subrogee of Haworth. Plaintiff claims a loss up to or exceeding $140,000 as insurer of the parties damaged by the loss of the Shipment. (*Id.* at ¶ 11.) Plaintiff asserts claims for relief under the Carmack Amendment, 49 U.S.C. § 14706, breach of contract, breach of bailment obligations, and negligence. Plaintiff asks for damages, litigation costs and fees, and interest. The Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332.

The FBI Parties and JAMCO previously moved the Court to dismiss Plaintiff's Carmack Amendment claim. The Court granted these motions and dismissed Plaintiff's Carmack Amendment claim against all Defendants (Doc. No. 68). Subsequently, the Court denied JAMCO's motion to transfer this matter to the Laredo Division (Doc. No. 70). The Court also granted the FBI Parties' Motion for Summary Judgment on JAMCO's cross-claim for indemnity (Doc No. 72). Therefore, Plaintiff's state claims against Defendants are all that remains. Defendants now move for final summary judgment as to these claims.

## II.   STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-

moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts.'" (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III.   REMAINING STATE LAW CLAIMS

Defendants contend that, following this Court's dismissal of Plaintiff's Carmack Amendment claims, the only claims that remain are those for breach of bailment obligations and negligence. Plaintiff, however, contends that its common law breach of contract claim still stands, although no longer subject to the Carmack Amendment.

In its order dismissing Plaintiff's Carmack Amendment claim (Doc. No. 68), the Court did not specify whether Plaintiff maintained a common law breach of contract claim against all Defendants. Instead, the Court concluded by stating "[t]his holding [dismissing Plaintiff's Carmack Amendment claim] does not release [Defendants] from liability because Plaintiff's state law causes of action may still be valid." (Doc. No. 68 at 7.) Further, in a subsequent order granting the FBI Parties' motion for summary judgment on JAMCO's cross-claim for indemnity, this Court stated in a footnote that "[t]he Court has previously held that the Carmack Amendment does not apply to Plaintiff's claims

because the damage at issue occurred in Mexico; consequently, Plaintiff's alternative breach of contract claim remains as Plaintiff's first cause of action, rather than the Carmack Amendment claim." (Doc. No. 72 at 9 n.4.) The Court has thus explicitly acknowledged that Plaintiff maintains a breach of contract claim, although not one based on the Carmack Amendment.

Furthermore, the Court's previous acknowledgement of a common law contract claim is consistent with the language of Plaintiff's First Amended Complaint ("Complaint"). While Plaintiff's first claim is titled "Breach of Contract and/or Duties Under the Carmack Amendment," the allegations of this claim state that each of the Defendants "breached its duties as a common carrier under [the Carmack Amendment] *and under the contract of carriage.* (Pl. Compl., Doc. No. 5, ¶ 13 (emphasis added).) Plaintiff thereby explicitly states a claim for relief under both the Carmack Amendment and common law. Thus, this Court finds that Plaintiff's common law breach of contract claim remains. As Defendants have not moved for summary judgment on this claim, it stands as to both the FBI Parties and JAMCO.[1]

### IV. CHOICE-OF-LAW AS TO NEGLIGENCE AND BAILMENT

As to the negligence and bailment claims, the parties dispute the applicable law in ruling on these claims. Thus, the Court considers the choice-of-law issue before examining the merits of the case. Plaintiff avers that, because FBI Express is part of a voluntary regulatory regime entitled the "National Motor Freight Classification" ("NMFC"), the FBI Parties are bound by the Uniform Bill of Lading ("USBL") that this organization adopts. Plaintiff further contends that the USBL incorporates the common

---

[1] Although Plaintiff filed a cross-motion for summary judgment as to this claim, the Court struck this motion as untimely at a hearing held on Oct. 20, 2009. As such, summary judgment in favor of either party is inappropriate as to this claim.

law of the United States (or essentially reverts to the terms of the Carmack Amendment) as a choice-of-law provision with respect to all claims against the FBI Parties and its downstream carriers, including JAMCO. Defendants, on the other hand, argue that Texas law governs the remaining claims in this case.

This Court previously rejected Plaintiff's contention that, where the Carmack Amendment does not apply, federal common law should govern (Doc. No. 71 at 3-4.) In doing so, the Court recognized that "in cases involving shipments to which the Carmack Amendment does not apply, courts typically apply state law to the plaintiff's tort or contract claims." (*Id.* at 4.) In their response to Defendants' Motions, however, Plaintiff now asserts that the USBL instructs the court to apply federal common law, regardless of whether courts typically do so.[2] The USBL terms and conditions state that a carrier in possession of the property described shall be "liable as at common law for any loss thereof or damage thereto, except as hereinafter provided." (Pl. Br., Ex. 3, § 1(a).) Among the exceptions listed to this common liability are damages or delays caused by an "Act of God, the public enemy, the authority of law, or the act or default of shipper." (*Id.* § 1(b)). According to Plaintiff, because these exceptions name four of the five usual defenses under federal common law, and the agreement concerns interstate commerce, the term "common law" should be read to refer to federal common law.

---

[2] Defendants have objected to the admission of Exhibits 3 and 4 of Plaintiff's response as inadmissible hearsay. Exhibit 3 is the National Motor Freight Classification, including a directory of its members and a sample USBL with its terms and conditions. Exhibit 4 is a letter from Paul G. Levine, General Manager of the National Motor Freight Traffic Association, Inc., certifying that FBI Express is a member of the NMFC. The Court finds both of these exhibits admissible. Exhibit 3 is admissible under both the business records exception to hearsay, Federal Rule of Evidence 803(6), as well as the hearsay exception under Federal Rule of Evidence 803(17) for directories generally used and relied upon by the public or by persons in particular occupations. The Court also notes that Plaintiff is using the USBL terms and conditions to establish the legal relationship between Plaintiff and Defendants. Accordingly, these terms and conditions represent words of legal significance rather than statements used for the truth of the matter asserted. Exhibit 4 is also admissible under Federal Rule of Evidence 803(6). The Court further notes that the FBI Parties do not contest their membership in the NMFC, which, to some degree, undermines their arguments against the admissibility of these exhibits. FED. R. EV. 801(d)(2).

The Court does not find this argument persuasive. First and foremost, it is not clear from the face of the USBL that "common law" refers to federal common law. That the document lists some, but not all, of the defenses traditionally associated with federal common law is not sufficient to establish definitively that the USBL instructs the use of federal common law. Furthermore, this Court takes into account its own previous holding that, while there may be good reason to apply federal common law to non-Carmack shipment claims because this promotes a nationally uniform approach, courts nonetheless typically apply state common law to such claims. (Doc. No. 68 at 4.) Absent clear instructions to the contrary, this Court finds no reason to deviate from this usual approach. The USBL provides no such clear instructions. Therefore, this Court declines to apply federal common law to the remaining state law claims of this case.

Plaintiff further contends that, if federal common law does not apply to this case, Mexican law should apply. Defendants, on the other hand maintain that Texas law should govern. District courts sitting in diversity apply the choice-of-law rules of the forum state. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004); *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004). For tort law, Texas applies the "most significant relationship" test, provided by the Restatement (Second) Conflict of Laws. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). In applying this test, courts should consider the following factors:

>  (a) the place where the injury occurred,
>  (b) the place where the conduct causing the injury occurred,
>  (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>  (d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 145 (1971).[3] The injury alleged here, namely the hijacking and the theft of cargo, occurred in Mexico. The place of the conduct allegedly giving rise to the injury, on the other hand, is less clear. The conduct to which Plaintiff points as giving rise to liability in this case includes: the driver not contacting the police immediately after the hijacking; the driver allowing a small car to pull over his large vehicle; failure of the Defendants to put in place proper procedures in the event of a hijacking; failure to ensure that the truck traveled in a convoy; and failure to instruct the driver to remain in the Customs area until daylight. (Pl. Br. at 27.) Clearly, the actions of the driver to which Plaintiff attributes fault occurred in Mexico. However, other decisions about the manner and time in which the truck crossed the border and traveled into Mexico must have occurred in California, where the FBI Parties' offices were located, and/or Texas, where JAMCO is based and where the truck passed through Customs. As to the last factor, the Court previously noted that, because the parties communicated via email to arrangement transportation for the Shipment, there does not appear to be a center of their relationship (Doc. No. 68 at 5.) However, Defendants now contend that the center of the parties' relationship is Texas, as all parties expected the shipment to enter Mexico via the Laredo border-crossing. Furthermore, according to Defendants, the FBI Parties came to Laredo to inspect JAMCO facilities before hiring JAMCO (Def. Reply at 10.)[4] Finally, Defendants point out that Texas was the place at which the relevant parties had

---

[3] In addition to the contacts analysis, the Restatement test includes consideration of several principles. These principles include: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 6 (1971).

[4] Because Plaintiff offers no evidence contrary to this assertion, this Court accepts it as true for purposes of these Motions.

their final opportunity to implement security measures prior to the transport of the Shipment into Mexico. This Court finds this final fact dispositive in its choice-of-law analysis. That the last opportunity at which security decisions could be made, including the specific decisions at issue here as to time and manner of the truck's journey into Mexico, occurred in Texas, suggests that Texas does have the most significant relationship to the claims of this case. Therefore, Texas choice-of-law analysis instructs application of Texas law to this dispute. The Court further notes that Mexico has very little interest in the liabilities of an American shipper to the insurer of a British business. What is at issue in this case is whether the Defendants breached specific obligations they had to the Plaintiff's insured vis-à-vis decisions they made in this country. Accordingly, Texas law is applicable, and we now turn to the merits of the negligence and bailment claims at issue.

## V. NEGLIGENCE CLAIMS

FBI Parties and JAMCO argue that they are entitled to summary judgment on Plaintiff's state law claims because Plaintiff has failed to establish what, if any, standard of care or duty the Defendants owed to Plaintiff. The FBI Parties further contend that Plaintiff has failed to establish proximate cause between any conduct of the FBI Parties and the loss giving rise to this lawsuit.

In response, Plaintiff points out that, in their joint motion to designate responsible third parties (Doc. No. 81), Defendants concede that the conduct of the driver (an employee of JM Transport), could have been negligent in his failure to contact the authorities right away or his decision to stop the truck. Because JM Transport was a subcontractor of JAMCO, who was a subcontractor of the FBI Parties, Plaintiff contends

9

that Defendants may be responsible for the actions of JM Transport and that of its employees as Defendants' agents. Plaintiff further contends that Defendants are principally liable for their failure to take measures to ensure that that the Shipment (1) traveled only in daylight; (2) traveled in convoy; (3) was accompanied by adequate security.

### A. Principal Liability

A negligence cause of action consists of three elements: 1) a legal duty owned to the plaintiff; 2) a breach of that duty by the defendant; and 3) the breach proximately caused the plaintiff's injury. *Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). The existence of a legally cognizable duty is a prerequisite to tort liability. *Reeder v. Daniel*, 61 S.W.3d 359 (Tex. 2001). For there to be negligence with respect to a particular person or entity, there must be a violation of the duty to that very person; thus, to maintain a negligence action, the plaintiff must establish both the existence and the violation of a legal duty owed to a plaintiff by the defendant. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195 (Tex. 1995). Duty is a question of law for the court to decide, based upon the facts surrounding the occurrence in question. *Texas Home Management, Inc. v. Peavy*, 89 S.W.3d 30 (Tex. 2002).

Mr. del Paso, as Plaintiff's corporate representative, and the president of the Mexican investigation company Plaintiff hired to investigate hijacking, stated in his deposition that there two measures that the FBI parties could have implemented to prevent the loss: they could have provided a security escort for the truck, or they could have required the truck not to leave unless it was in a convoy during heavy traffic. (Enrique del Paso Moron Dep. 159:12-160:6, July 22, 2009.) He later elaborated that the

truck could have also been required to leave during daylight hours. (Enrique del Paso Moron Decl. ¶ 7.)[5] This Court must therefore decide whether, as a matter of law, Defendants had a duty to take these measures.

Mr. del Paso's opinion as to the measures that Defendants' should have taken is contradicted by that of Juan Menchaca, JAMCO's president and owner. Mr. Menchaca testified in his deposition that, in his experience and knowledge of the drayage business, neither police escorts nor convoys were required or ever used in short-haul shipments (as opposed to those that transported goods deep into Mexico). (Juan Menchaca Dep. 99:7-100:20, Aug. 3, 2009.) Furthermore, Don Pollock, the president of Freight Brokers, Inc., testified that in the more than thirty years that he has been in the freight business specializing in textile shipments, the FBI Parties have never had any cross-border hijackings for any of its shipments, other than the one giving rise to this lawsuit. (Donald Pollock Dep. 132:10-13, Aug. 11, 2009). In addition, he corroborated Mr. Menchaca's testimony that, to his knowledge, the only previous shipments for which security had been required were long-haul shipments, and in those instances specific requests were made by the customer. (Pollock Dep. 147:23-149:24.) Finally, Dolores Gallegos, an

---

[5] Defendants move to strike Mr. del Paso's Declaration as a sham declaration made solely for the purpose of creating an issue of fact, as evidenced from its clear contradiction of his earlier deposition. The Court finds the Mr. del Paso's Declaration, while more certain in its assertions than his deposition and including some additional contentions, does not directly contradict the deposition such that it should be entirely stricken. However, the Court does take note of the Declaration's inconsistencies with statements made by Mr. del Paso while under direct questioning, and weighs statements within it accordingly.
    Defendants further object to the Declaration on the grounds that Mr. del Paso has not been be properly established as an expert regarding hijackings and the proper standard of care for freight carriers, and that he has not provided a sufficient basis for his opinions under Federal Rule of Evidence 702. Although not dispositive, the Court notes that Mr. del Paso has no experience as a freight forwarder, and his knowledge of industry practice in this area is accordingly limited. However, because he does have nineteen years of experience investigating cargo thefts, the Court finds that he is qualified under Federal Rules of Evidence to offer an opinion as to what security measures could have been taken. The Court will appropriately weigh this opinion according to his background and the materials he consulted in forming his opinion.

employee of Freight Brokers since 1999, confirmed that the industry concern for loss of shipments in Mexico is primarily in relation to northbound shipments and those in the Mexico City area, not shipments at the Laredo border. (Dolores Gallegos Dep. 114:12-115:11, Aug. 11, 2009.)

Notably, Plaintiff, aside from Mr. del Paso's testimony suggesting that these measures should have been taken, offers no real evidence to refute the factual contentions that Defendants offer through their witnesses. Mr. del Paso himself testified in his deposition that, due to the consistency of traffic and cargo hauls between Laredo and Mexico, it is as likely for hijackings to occur during the day as at night, and there are therefore no hours that are notably more dangerous than the rest. (del Paso Moron Dep. 91:4-21.) He also testified that the heavy traffic on the short-haul route in this case rendered hijackings an unusual occurrence. (del Paso Moron Dep. 239:11-20.) Furthermore, Plaintiff offers no facts suggesting that other freight carriers routinely provided greater security measures for cross-border transports or required these transports to travel in a convoy by daylight. That the measures identified by Mr. del Paso were possible does not alone create a legal duty to take them. In addition, as JAMCO correctly points out, Plaintiff fails to establish a pattern of hijackings of short-haul movement sufficient to make such crimes reasonably foreseeable, and thereby fails to show the existence of a duty under the circumstances of this case.

In light of this evidence, this Court finds that, as a matter of law, Defendants owed no duty to provide a police escort with the shipment or to ensure that the shipment traveled in a convoy during daylight hours. The evidence presented by Defendants establishes both that such a standard of care was not industry practice, and that there was

not sufficient risk such that this conduct would be the standard of care exercised by a reasonably prudent transportation broker. Thus, as a matter of law, Defendants owed no duty to provide the measures which Plaintiff suggests they were negligent in withholding.

### B. Liability for an agent

The thrust of Plaintiff's argument with regards to negligence is that Defendants are each liable for the negligent conduct of Mr. Villa, an employee of JM Transport, in pulling over the vehicle in the face of little threat, and in failing to contact the police right away. Plaintiff argues that JM Transport, and by extension its employees, were an agent of each of the Defendants, thereby making Defendants liable for its negligent conduct. A general contractor's duty of care is commensurate with the control it retains over the subcontractor's work. *Elliot-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999). A duty may arise when a general contractor retains control over the sub-contractor's work. *Id.* A contractual right of control over a party's work, even if never exercised, can also create a duty of care. *Id.* at 804.

In its Motion, the FBI Parties assert that they had no knowledge that JM Transport would be involved in the shipment of the linens from Texas into Mexico; thus, JM Transport could not have been their agent. Mr. Mechaca testified that the decision to hire JM Transport was made by JAMCO, and that the FBI Parties took no part in that decision. (Menchaca Dep., 80:14-81:11.) Donald Pollock also testified that the FBI parties played no part in selecting JM Transport to provide drayage service, and that that decision was made entirely by JAMCO. (Pollock Dep., 48:22-49:2.) Mr. Pollock further testified that, on the FBI Parties' visit to Laredo, JAMCO represented to them that it used its own trucks for border-crossing. (Pollock Dep., 151:19-23.) This was reiterated by

13

Dolores Gallagos. (Gallagos Dep. 99:21-100:3.) Thus, according to the FBI Parties, they believed that JAMCO was to handle all of the transport itself, including the drayage. (FBI Parties Mot. at 5.) Plaintiff presents no facts to contradict this assertion. This Court therefore finds that, because the FBI Parties did not know JM Transport was involved in the transport and had no knowledge that JAMCO sub-contracted the drayage portion of the transportation, it could not have exercised any control over the actions of JM Transport. Therefore, the FBI Parties cannot be held liable for the actions of the Mr. Villa.

JAMCO, on the other hand, did in fact know of JM Tranport's involvement, as it chose to hire it to handle the drayage. Mr. Mechaca described JM Transport as a "preferred supplier." (Mechaca Dep. 9:8.) However, JAMCO's website lists JM Transport as one of its subsidiaries. *Id*. Mr. Mechaca indicated that this information was technically incorrect, because JM Transport is only a preferred supplier to JAMCO. He further elaborated that JAMCO has no ownership interest in JM Transport. (Mechaca Dep. 10:5.) Aside from this, very little information is provided by either party as to the extent and nature of JAMCO's relationship with JM Transport.

In construing these facts in a light most favorable to Plaintiff, as we must, this Court finds that a fact issue remains as to the nature and degree of control that JAMCO exercised over JM Transport. Clearly, the two parties worked very closely with one another. Although Mr. Menchaca asserts in his deposition that JAMCO had no ownership interest in JM Transport, JM Transport is listed as on of JAMCO's subsidiaries on its website. Furthermore, Mr. Villa, the driver employed by JM Transport, picked up the Shipment directly from JAMCO. It is possible that JAMCO maintained some degree of

14

control over JM Tranport's actions or decisions such that its duty of care to Haworth with respect to Mr. Villa's actions was triggered. In light of the fact that Plaintiff rests much of its negligence case on a principal-agent theory of liability, the nature of the relationship between JAMCO and JM Transports presents a disputed area of material fact. Therefore, this Court finds that the FBI Parties' Motion for summary judgment as to negligence should be granted, and JAMCO's Motion should be denied.[6]

## VI. BAILMENT CLAIMS

The elements of a bailment cause of action are: 1) the delivery of personal property by one person to another in trust for a specific purpose; 2) acceptance of such delivery; 3) an express or implied contract that the trust will be carried out; and 4) an understanding under the terms of the contract that the property will be returned to the transferor or dealt with as the transferor directs. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 462-63 (Tex. App.—Dallas 2007, pet. denied). Key to the creation of a bailment is that both possession and control of an object pass from the bailor to the bailee. *See, e.g., Hoye v. Like*, 958 S.W.2d 934, 936 (Tex. Civ. App.—Amarillo 1997, no pet.). The common law liability of a bailee to a bailor for loss or damage to the bailed property is limited to the consequence of the bailee's fault or negligence, although

---

[6] In light of this, this Court also considers Defendants' Motion to Designate Responsible Third Parties (Doc. No. 81). Unknown persons can be designated as responsible third parties if the unknown person committed a criminal act that was a cause of the loss of injury that is the subject of the lawsuit. TEX CIV. PRAC. & REM. CODE §33.004(j). Defendants argue that JM Transport and the Mr. Villa are appropriate responsible third parties in this case because they were in possession and control of the shipment at the time of the hijacking. Several of the parties, in their deposition testimony, indicate that Mr. Villa might have been in some kind of conspiratorial agreement with the hijackers that ultimately allowed them to successfully steal the cargo. If true, this would clearly constitute a criminal act. Defendants further argue that the two male hijackers should also be named as "John Doe 1" and "John Doe 2" as persons clearly guilty of committing a criminal act. In opposition to this Motion, Plaintiff asserts only that Texas law should not apply to this case, and that neither federal common law nor Mexican law allow for the designation of responsible third parties. However, because this Court has now found that Texas law should apply to this dispute, we find that JM Transport, Eduardo Cortes Villa, and the two unnamed hijackers meet the requirements under Texas law and should be designated as responsible third parties in this case. Defendants' Motion is therefore granted.

this liability may be enlarged to place a greater risk upon the bailee by agreement of the parties. *McKenzie Equipment Co. v. Hess Oil & Chemical Corp.*, 451 S.W.2d 230, 230 (Tex. 1970).

The FBI Parties point out that at no point during the relevant time period did they have physical possession of the Shipment. This factual assertion is not in dispute. The Defendants further point out that, because they did not act negligently, they cannot, as a matter of law, have breached their bailment obligations. Plaintiff, in response, reiterates that both parties should be held liable for breach of bailment for the negligent actions of their subcontractors.

This Court finds that summary judgment as to the FBI Parties is appropriate. A bailment cannot exist unless there is both delivery and acceptance of the property. *See Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d at 462-63. It is undisputed that the FBI Parties never took possession, or accepted, the Shipment. Furthermore, the FBI parties are not liable for the actions of Mr. Villa or JM Transport, as discussed above. Thus, as a matter of law, there was no bailor/bailee relationship between the FBI Parties and Plaintiff.

JAMCO, on the other hand, did take possession of the Shipment in Laredo, Texas. Therefore, a bailment cause of action exists as to it. Although JAMCO itself did not act negligently in performing its bailment obligations, as discussed above, there remains a fact question as to whether JM Transport, to whom JAMCO subcontracted the drayage portion of their bailment duties, acted as JAMCO's agent. Because a factual issue remains as to whether JM Transport acted negligently, and as to whether JM Transport was an agent of JAMCO, summary judgment as to JAMCO for breach of

Case 4:08-cv-02549   Document 94   Filed in TXSD on 11/13/09   Page 17 of 17

bailment obligations is not appropriate. Therefore, this Court finds that the FBI Parties' Motion for summary judgment as to breach of bailment should be granted, and JAMCO's Motion should be denied.

### VII. CONCLUSION

FBI Defendants' Motion for Summary Judgment (Doc. No. 82) is **GRANTED** as to Plaintiff's negligence and bailment claims. JAMCO's Motion (Doc. No. 83) as to the same is **DENIED**. Plaintiff maintains a common law breach of contract claim as to all Defendants. Furthermore, Defendants' Motion for Leave to Designate Responsible Third Parties (Doc. No. 81) is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** this 13th day of November, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE